UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBYN J. WILLIAMS,<br><br>                                 Plaintiff,<br>vs.<br><br>NANCY A. BERRYHILL,<br>Commissioner of Social Security,<br><br>                                 Defendant. | Case No. 2:16-cv-00701-GMN-GWF<br><br>**REPORT AND**<br>**RECOMMENDATION**<br><br>Motion for Reversal and/or Remand (#13)<br>Cross-Motion to Affirm (#18) |

This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Robyn Williams' claim for disability benefits under Title II of the Social Security Act. Plaintiff's Complaint (ECF No. 1) was filed March 30, 2016. Defendant's Answer (ECF No. 7) was filed June 20, 2016. A certified copy of the Administrative Record (the "A.R.") was filed on June 21, 2016. *See* (ECF No. 8). This matter has been submitted to the undersigned United States Magistrate Judge for Findings and Recommendations on Plaintiff 's Motion to Remand (ECF No. 13), filed on September 2, 2016 and the Commissioner's Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal and/or Remand (ECF No. 18), filed on December 3, 2016. Plaintiff filed a Reply (ECF NO. 19) on December 23, 2016.

## BACKGROUND

### A.    Procedural History.

On April 4, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. Plaintiff alleged that her disability began on January 1, 2007. AR 54, 119. The Social Security Administration denied Plaintiff's claim on August 30, 2012. AR 53. Plaintiff then filed for reconsideration, which was denied on April 10, 2013. AR 77-80. Plaintiff requested a hearing

before an Administrative Law Judge ("ALJ") and testified at a hearing before the ALJ on February 4, 2014.  AR 33-52, 81-82.[1]  The ALJ determined that Plaintiff was not disabled from January 1, 2007 through September 30, 2010, Plaintiff's date last insured.  AR 28.  Plaintiff appealed the decision of the ALJ to the Appeals Council on August 29, 2014.  AR 5-7.  The Appeals Council denied Plaintiff's request for review on January 29, 2016.  AR 1-4.  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

**B.    Factual Background.**

Plaintiff Robyn Williams was born on October 3, 1952.  AR 153.  Plaintiff obtained her high school diploma and went to college "off and on" but did not obtain a degree.  AR 37.  She obtained a degree in cosmetology in 1973.  AR 37.  Plaintiff's stated that she worked in bank collections from 1995 to 2006.  AR 141.

**1. Plaintiff's Disability/Work History Reports and Hearing Testimony**

In her initial May 2012 disability report, Plaintiff claimed she was disabled since January 1, 2007 and listed the following conditions: fibromyalgia, sleep apathy and vision loss in her left eye.  AR 140.  Plaintiff reported that she stopped working because of her conditions.  Plaintiff was taking caradal, gabapentin, methadone, soma and xanax.  AR 142.  Plaintiff reported that Theresa L. Steckler, M.D. was her primary care physician and performed exams, prescribed medications and gave her referrals to other specialists.  AR 143.  Plaintiff submitted a second disability report in October 2012.  Plaintiff reported that there had not been any change, for better or worse, since her last disability report; nor had Plaintiff seen a doctor for her conditions.  AR 155-156.  Plaintiff submitted a third disability report in April 2013.  There were no changes from her prior report.  AR 170-174.

Plaintiff filled out a Mental Health Questionnaire in November 2012.  Plaintiff stated that she suffered from manic depression with obsessive compulsive disorder behavior as well as panic attacks.  AR 162.  Plaintiff stated that she would not be able to work around people, got distracted easily, was very sleepy and forgetful and would need to have instructions repeated to her several times.  She could

---

[1] A vocational expert did not testify during the February 4, 2014 hearing, although Dr. Thomas Mitchell was on standby to testify.

not watch a movie and then explain the plot; could only read on occasion because her eyes got blurry; and was generally unmotivated to do anything because of her back pain and a lack of energy. AR 163. Plaintiff reported that she was isolated from friends and family, neglected her personal grooming and slept from 13 to 19 hours a day. AR 164. Plaintiff reported a history of drug use and stated that every once in a while she would entertain suicidal thoughts. AR 167.

Plaintiff testified at a hearing before the ALJ on February 4, 2014. AR 36-52. Plaintiff testified that prior to September 30, 2010 she suffered from daily migraines and visual problems in her left eye. AR 37-38. Plaintiff stated that she took aspirin to alleviate her migraines and was advised to limit her aspirin intake. Prior to September 30, 2010 she was in a depressive state "most of the time." AR 39. She stopped working at Bank of America because she felt "really, really pressured." AR 40. Her emotional state prevented her from working prior to September 30, 2010. AR 41. When she was depressed she would stay in bed, keep the drapes closed and could not function or stay focused. She would not do housework and was ashamed of her behavior. AR 44. Plaintiff stated that she had been suicidal and had attempted suicide in 1990 while in El Paso, Texas.

Plaintiff explained that she suffered from sleep apnea and required the use of a CPAP machine. AR 41-42. She smoked about 10 cigarettes a day and suffered from "around the clock sleepiness." AR 42. Plaintiff described the numbness that would occur in her right hand, her feet and her right leg. She believed the numbness was due to her neuropathy. She took Nuvigil to "wake her up" but she did not like to take it because she became extremely nervous and "over the edge." AR 43. Plaintiff had two friends in Las Vegas and believed that she generally got along with people. AR 45. She stated that her brother described her as "rageful." She had lost interest in her hobbies, such as gardening and swimming. AR 45. She suffered from a cognitive disorder, which affected her ability to work. AR 47-48. She could not remember how to do simple tasks and was easily distracted.

Plaintiff testified that during the day she was usually in her bed sleeping. AR 48. She was unable to read or look at a computer screen because her vision was blurry. She taught Sunday school during the summer of 2009. Plaintiff's brother typically did all of her grocery shopping. AR 49. Plaintiff testified that sitting and standing would hurt her lower back. She could sit for either an hour or 20 minutes at a time depending on the day and could only stand for around 10-15 minutes at a time.

AR 49. Plaintiff also had a hard time lifting anything over 15 pounds. Plaintiff testified that she was taking Depakote, Welbutrin, Apresoline, Klonopin, Gabapentin, Prozac and Nuvigil for all of her symptoms. AR 51.

### 2. Medical Records and Reports

Plaintiff was treated by Dr. Michael Horan, a neurologist at Summerlin Medical Center from what appears to be December 11, 2006 through March 19, 2013. AR 200, 503. On July 13, 2010, Plaintiff complained of headaches, blurry vision, a sudden loss of strength, numbness in her extremities, left rotator cuff injury and nocturnal leg cramps. AR 201. Dr. Horan noted that Plaintiff had decreased handgrip on the right, decreased bicips at 4/5 on the right, decreased range of motion of the cervical spine, and decreased movement of the left shoulder with only minimal pain. Based on Plaintiff's complaints, Dr. Horan ordered MRIs of her brain and cervical spine as well as an MR angiogram of the head. AR 203. He prescribed Gabapentin and requested a followup in six to eight weeks. Plaintiff returned for a followup visit on September 2, 2010. Plaintiff had undergone the requested MRIs. The MRI of the brain showed very few deep white matter changes and was in fact better than the previous study done in 2006. AR 204, 211. The MR angiogram of the head showed no evidence for vascular malformations and there was no stenosis noted. AR 209. The MRI of the cervical spine was mildly abnormal for bilateral foraminal narrowing at C5-6. AR 204. Dr. Horan found that because the etiology of Plaintiff's complaints was unknown, she "most likely has fibromyalgia." AR 205.

Plaintiff returned to Dr. Horan on December 13, 2010 with complaints of pain in her right hip along with continued complaints of her diffuse dysesthesias (abnormal sensation to touch). Dr. Horan noted a decreased range of motion in her cervical and lumbar spines and recommended physical therapy. An MRI of Plaintiff's right hip was unremarkable and showed no lesion or fracture. AR 218. According to the administrative record, the only other time Plaintiff was seen by Dr. Horan was on March 19, 2013. AR 503. Plaintiff again complained of headaches and distal neuropathy. Dr. Horan noted that Plaintiff had a background of fibromyalgia. Plaintiff was diagnosed with polyneuropathy, sleep apnea, and a headache syndrome. Dr. Horan found that Plaintiff should increase her upper body exercise routine, continue her medications and schedule a followup in four months. AR 503.

Plaintiff received a retinal consultation from Meher Yepremyan, M.D. on November 10, 2009.

AR 221.  Dr. Yepremyan reviewed the images of Plaintiff's eyes and found that she suffered from epiretinal membrane with mild vitreomacular traction in the left eye and possible optic nueropathy in the left eye.  He noted that only some of Plaintiff's symptoms could be explained by the epiretinal membrane and he advised Plaintiff to see a neuro-ophthalmologist or neurologist to address her complaints of tunnel vision and headaches.  AR 221.  Plaintiff returned for a followup on December 7, 2009.  Plaintiff stated she did not want to take the Pred Forte eyedrops suggested by Dr. Yepremyan and requested refractive correction.  Dr. Irene Voo conducted an examination and found that Plaintiff had a epiretinal membrane in the left eye, macular choroidal nevus in the right eye, hypertension, and an early cataract in both eyes.  AR 220.  Dr. Voo recommended continued observation and cleared Plaintiff for refractive correction.

Plaintiff was treated on September 18, 2009 by Thomas Chalkley, M.D. at Westfield Eye Center for complaints of tunnel vision in her left eye as well as associated headaches.  AR 223.  Dr. Chalkley found that Plaintiff suffered from migraines, a retinal disorder of the left eye, headaches, cataracts in both eyes and dry eyes syndrome.  AR 225.  Dr. Chalkley advised Plaintiff to lower her blood pressure and use artificial tears to address her dry eyes.  On March 8, 2010, Plaintiff complained of constant flashes of light in her left eye, blurry spots and floaters.  AR 229.  Plaintiff was diagnosed with optic atrophy is the left eye, photopsia in the left eye, cataracts in both eyes, pinguecula in both eyes, an epiretinal membrane in the left eye, vitreous detachment of both eyes, headaches and dry eye syndrome in both eyes.  AR 231.  Plaintiff was instructed to obtain an MRI for the optic atrophy.  The MRI of her brain revealed a mild chronic periventricular microangiopathy.  AR 235, 275.  Plaintiff was prescribed morphine for her headaches and referred to an infectious disease doctor for the potential Lyme disease.  AR 235.  Plaintiff's treatment was substantially the same through her last noted visit on August 17, 2011.  AR 236-252.

In April and May 2010, Plaintiff was seen by Alka Rebentish, M.D. at Infectious Disease Associates to determine whether her symptoms were due to Lyme disease.  AR 485-489.  Based on the tests done, Plaintiff did not have Lyme disease.  AR 485.  Plaintiff treated with Faylona Maria, M.D. from June 2010 through September 2010.  AR 285-306.  Plaintiff complained of the following: hypertension, hyperlipidemia, chronic fatigue, vision changes, facial pain/paralysis, paresis, paresthesia,

joint pain, anxiety, depression, thyroid nodule, and sleep disorder. AR 288-289, 301. Dr. Maria prescribed medication for Plaintiff's symptoms and advised her to return for follow-ups as needed. AR 290-295.

From December 7, 2012 through August 15, 2013, Plaintiff was continually diagnosed with chronic pain, sleep apnea, nicotine dependence headaches, hypertension and depression by Dr. Theresa Steckler at Internal Medicine Associates. AR 507-527. Plaintiff was advised to quit smoking and to increase her daily exercises. Plaintiff was also instructed to alter her medications because they were likely impacting her symptoms.

Plaintiff was also treated by Walter J. Willoughby Jr., M.D. from December 9, 2011 through September 12, 2013. Plaintiff initially presented to Dr. Willoughby on December 9, 2011 for treatment of her COPD, excessive daytime sleepiness and shortness of breath. AR 376. Dr. Willoughby noted that Plaintiff suffered from fibromyalgia, which was likely the primary cause of her sleepiness. AR 376. This diagnosis, along with a litany of other diagnoses, was noted on all treatment records from Dr. Willoughby from that day on. AR 329-376.

**C.   ALJ's Decision.**

In a decision dated July 15, 2014, the ALJ found that Plaintiff did not suffer from a disability, as defined in the Social Security Act, at any time from January 1, 2007 through September 30, 2010, the date last insured. AR 28. In reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f). The ALJ first found that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2010. AR 12. Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2007 through her date last insured. The ALJ then found that through the date last insured, Plaintiff had the following medically determinable impairments:

> sleep apnea (with use of nocturnal oxygen), optic atrophy of the left eye (with mild vision loss in the left eye, an epiretinal membrane and bilateral cataracts), hypertension, a history of headaches, mild degenerative disc disease of the cervical/lumbar spine, a history of right shoulder rotator cuff disease/bursitis, hepatitis C (with remote history of Interferon treatment) and a mild right hand tremor.

AR 12. The ALJ found, however, that Plaintiff's impairments were not severe. He specifically found

that through the date last insured, Plaintiff did not have an impairment or a combination of impairments that significantly limited her ability to perform basic work activities for 12 consecutive months. AR 12.

In coming to his conclusion, the ALJ summarized the medical record from both before and after Plaintiff's last date insured. The ALJ noted that the medical records showed that Plaintiff only received conservative treatment for her various symptoms, which included medications and increased exercise. AR 14-20. Plaintiff never received surgical intervention. Despite Plaintiff's complaints of numbness and tingling of the fingers and toes, an EMG showed no electrodiagnostic evidence of neuropathy or radiculopathy. AR 18. Plaintiff consistently stated that she was under increased stress and anxiety surrounding the care of her elderly parents and the subsequent death of her father in 2010, which was one of the reasons for her failure to follow up with treatment as prescribed. AR 15, 17. The ALJ noted that in September 2010, Dr. Horan stated that Plaintiff may have fibromyalgia, but that no tender points were noted during the exam. Because there was no confirmed diagnosis of fibromyalgia prior to the expiration of the date last insured, the ALJ stated that it was not a medically determinable impairment. AR 19.

The ALJ discussed the opinions of the Disability Determination Services physician, Dr. William Dougan, M.D., and psychologist, Dr. Pastora Roldan, Ph.D. AR 24. Both physicians found that there was insufficient evidence in the record to find that Plaintiff suffered from severe impairments. The ALJ afforded significant weight to these findings. The ALJ also noted that none of Plaintiff's treating physicians found that Plaintiff was disabled by any of her conditions and therefore unable to work. AR 27.

The ALJ also found that Plaintiff's allegations of disability were not entirely credible. AR 24-25. He repeatedly noted that Plaintiff only received conservative care for her symptoms and failed to seek more aggressive treatment. He therefore inferred that her pain was not as severe as she suggested. AR 25. The ALJ noted that on several occassions Plaintiff failed to follow her prescribed treatments, by deciding to stop taking certain medications or by failing to fill medications because "she had too much going on." AR 23-24, 26-27. The ALJ also repeatedly referenced the fact that Plaintiff was the primary caregiver to her elderly parents during the relevant time period. This suggested that she was capable of performing similar work in a paid position. AR 25. He also found that the following

activities suggested an ability to do more than sleep all day and watch TV, as Plaintiff stated during the hearing: 1) Plaintiff could drive her mother and herself to medical appointments; 2) she exercised on the treadmill; 3) she went to the dog park; 4) she presented to medical appointments with good hygiene and appropriate dress; and 5) she was in charge of her father's estate. AR 26. Based on these activities and the totality of the circumstances, the ALJ concluded that Plaintiff was not credible and was not disabled. AR 27.

## DISCUSSION

### I. Standard of Review.

A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as

comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II.     Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:  (a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A). The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform a significant number of other jobs that exist in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007).

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). At the first step, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Commissioner determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is

not considered disabled. *Id*. § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id.* § 404.1520(e). If the claimant cannot perform past relevant work, the Commissioner has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. *Id.* § 404.1520(f). If the Commissioner cannot meet his or her burden, the claimant is entitled to disability benefits. *Id.* § 404.1520(a).

### III. Analysis and Findings

#### A. Whether the ALJ Erred at Step Two of the Sequential Evaluation Process

At step two of the sequential evaluation process, an ALJ must determine whether the claimant has a medically determinable impairment(s) and whether that impairment or a combination of impairments is "severe." 20 CFR 404.1520(c). An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. *Id.* Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85–28 ("SSR 85–28"). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individuals ability to work." *See* SSR 85–28; *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir.2005) ("[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'")

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify "at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account ." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Medical evidence and testimony need only pass a low threshold at step two. *See Ulchak v. Colvin*, 2015 WL 9315540, at *2 (W.D. Wash. Dec. 22, 2015)

(citing *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007)). "Ample authority cautions against a determination of nondisability at step two." *Ortiz v. Commissioner of Social Sec.*, 425 Fed.Appx. 653, 655 (9th Cir. 2011) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)); *Webb*, 433 F.3d at 686; *Smolen*, 80 F.3d at 1290.

Plaintiff's argument that the ALJ erred at step two is two-fold. First, Plaintiff argues that the ALJ mischaracterized Dr. Horan's opinion that the diagnosis of fibromyalgia was not confirmed. Second, Plaintiff argues that the ALJ's analysis of Plaintiff's fibromyalgia was incomplete. Specifically, Plaintiff asserts that the ALJ could have found that Plaintiff suffered from fibromyalgia under the 2010 ACR Preliminary Diagnostic Criteria prior to September 30, 2010 (her date last insured). The Court agrees.

Fibromyalgia is a complex medical condition that is characterized by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least three months. Social Security Ruling 12-2p. In order to establish that a claimant suffers from a medically determinable impairment of fibromyalgia, a claimant may provide evidence from an acceptable medical source, such as a licensed physician. *Id.* There are also two other sets of criteria used to diagnose fibromyalgia. The first is the 1990 American College of Rheumatology (ACR) Criteria for the Classification of fibromyalgia. Under that criteria, a person may be found to have fibromyalgia if the individual has all three of the following: (1) a history of widespread pain; (2) at least 11 of the 18 documented positive fibromyalgia tender points; and (3) evidence that other disorders could cause the symptoms or signs were excluded. *Id.*

The second is the 2010 ACR Preliminary Diagnostic Criteria. Under that criteria, an individual may be found to suffer from fibromyalgia if she has: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms; and (3) evidence that other disorders that could cause the symptoms have been excluded. *Id.* Symptoms of fibromyalgia include:

> [M]uscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of

>breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms.

2012 SSR LEXIS 1 at *9.  Additionally, some co-occuring conditions that may be considered in finding a medically determinable impairment of fibromyalgia include:

>[I]rritable bowel syndrome or depression (. . .), anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome.

*Id.* at *10.

In determining whether Plaintiff suffered from fibromyalgia, the ALJ noted Dr. Horan's September 2, 2010 opinion.  Dr. Horan stated that Plaintiff "most likely had fibromyalgia" but because no tender point analysis was noted and there was no confirmed diagnosis at that time, the ALJ declined to find fibromyalia medically determinable.  Plaintiff concedes that there was no confirmed finding of fibromyalgia prior to September 30, 2010.  Moreover, the ALJ was correct in stating that the medical record does not display evidence of positive trigger points to find that Plaintiff suffered from fibromyalgia under the 1990 ACR Criteria.  However, the ALJ entirely failed to discuss Plaintiff's subsequent diagnosis of fibromyalgia made by Dr. Willoughby (first in December 2011 and continuing thereafter) or Dr. Horan's notation of fibromyalgia made in March 2013.  *See* AR 329-376, 503.  If the ALJ had analyzed Plaintiff's symptoms under the 2010 ACR Preliminary Diagnostic Criteria, he may have found that Plaintiff had sufficient symptoms to support the diagnosis of fibromyalgia prior to as well as after September 30, 2010.

The medical records prior to September 30, 2010 indicate that Plaintiff suffered from at least six fibromyalgia symptoms including: muscle pain (AR 184-197, 204, 493), fatigue (AR 297, 301, 493), headaches (AR 184-197, 201), numbness and tingling (AR 201, 543), blurred vision (AR 201, 221, 229), muscle weakness (AR 202), and dry eyes (AR 231).  Therefore, based on the medical evidence produced prior to September 30, 2010, the ALJ could have found fibromyalgia as a medically determinable impairment.  However, it is unclear whether Plaintiff's fibromyalgia could be defined as severe (as Plaintiff argues), either independently or in combination with Plaintiff's other medically determinable impairments given her activities during the relevant time period.  Nevertheless, the ALJ's

failure to consider Plaintiff's post-September 30, 2010 diagnosis of fibromyalgia in conjunction with her symptoms prior to that date was an error that warrants remand.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ erred at step two of the sequential analysis in failing to find a medically determinable impairment of fibromyalgia. The medical evidence justifies a remand of this case to the Commissioner for a further hearing on whether Plaintiff's fibromyalgia constitutes a severe impairment and if so, a determination of Plaintiff's residual functional capacity and overall disability status.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and Remand (#13) be **granted**, and that the Defendant's Cross Motion to Affirm (#18) be **denied**, and that this case be remanded to the Social Security Administration for further proceedings as recommended.

DATED this 21st day of November, 2017.

_____
GEORGE FOLEY, JR
United States Magistrate Judge

## NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. Appeals may been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).